IN THE UNITED STATE BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
WESTERN DIVISION

IN RE:

BK 07-70190-CMS-13

NANCY MANNING,

DEBTOR.

## MEMORANDUM OF DECISION

This matter came before the court on confirmation of the Chapter 13 plan filed by debtor Nancy Manning (Debtor)(BK Doc. 3); objection to the confirmation of debtor's plan filed by Green Tree - AL, LLC (Green Tree)(BK Doc. 18); debtor's motion to value collateral of Green Tree (BK Doc. 8); objection to debtor's motion to value filed by Green Tree (BK Doc. 17). This court has considered the documentary evidence in the context of applicable law. The court **OVERRULES** Green Tree's Objection to Confirmation and **OVERRULES** Green Tree's Objection to debtor's motion to value.

## FINDINGS OF FACT

The facts in this instant case are undisputed. The Debtor filed her Chapter 13 case on February 7, 2007. The Debtor listed ownership in a "1996 Doublewide mobile home" with a value of $12,500 on Schedule B of her bankruptcy petition and listed Green Tree as the secured creditor on said property. The Debtor did not list any ownership in any real property on Schedule A of her petition.

The Debtor also filed her Chapter 13 Plan on February 7, 2007. (BK Doc. 3). In said plan, the Debtor proposed pay to the debt owed to Green Tree on a 1996 Sweetwater 28 x 46 mobile home (the "mobile home"). The plan included the following language, "Debtor values the 96' Sweetwater 28 x 46 mobile home at its FMV of $12,500 and proposes to pay Greentree this secured value +

balance of claim unsecured." (BK Doc. 3). Also on February 7, 2007, the Debtor filed a Motion to Value Security (BK Doc. 8) in which the Debtor stated that Green Tree purports to have a secured claim on the mobile home and averred that the value of the creditor's interest in said property is $12,500. Said motion asked this Court to determine that Green Tree's security interest has a value of $12,500. It appears to be undisputed that the Debtor resides in the mobile home.

On February 27, 2007 Green Tree filed a fully secured claim in the case for $23,727.96. (Claim No. 001). Green Tree attached a copy of the Certificate of Title for the mobile home which listed Southland Services Inc. as the lienholder. Green Tree is the servicing agent for Southland Services Inc. On March 12, 2007 Green Tree filed an objection to the debtor's motion to value security (BK Doc. 17) and an objection to confirmation of the debtor's plan (BK Doc. 18).

## CONCLUSIONS OF LAW

The Bankruptcy Court has jurisdiction of Manning's Chapter 13 case pursuant to 28 U.S.C. § 1334(a). This court has jurisdiction of this issue, a core bankruptcy proceeding, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

In its objections and supporting Memorandum of Law, Green Tree argues that the Debtor cannot value the mobile home under bankruptcy law as modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Specifically, Green Tree argues that the mobile home would fall under the new definition of "debtor's principal residence" and therefore the debt owed on said property could not be modified pursuant to 11 U.S.C. § 1322(b).

Section 1322(b)(2) states, "...the plan may modify the rights of holders of secured claims,

2

other than a claim secured only by a security interest in real property that is the debtor's principal residence." The phrase "debtor's principal residence" has been defined under BAPCPA as follows, "(A)...a residential structure, including incidental property, without regard to whether that structure is attached to real property; and (B) includes an individual condominium or cooperative unit, a mobile home or manufactured home, or trailer." 11 U.S.C. § 101(13A).

Since 1978 the language of §1322(b)(2) has remained unchanged. Since that time, it has been required that the secured claim be secured by an interest in real property that is the debtor's principal residence in order to escape modification under the debtor's plan. The language of §1322(b)(2) is the same today as it was in 1978. The 2005 BAPCPA amendment did define the term "debtor's principal residence" which is contained in §1322(b)(2). It did not define "real property that is the debtor's principal residence". Congress certainly could have defined "real property which is the debtor's principal residence" if they had so chosen. Congress also did not delete the words "real property" in §1322(b)(2). This also could have been done if Congress had so chosen.

Green Tree in its analysis assumes that §101(13A) was enacted to protect mobile home lenders. There is no legislative history suggesting that this is the case. This amendment adding §101(13A) appears to have been enacted to protect mortgage lenders who have taken a lien on debtor's real estate which was the debtor's principal residence, but which also included property other than real estate.

BAPCPA also provided us with a brand new definition of the phrase "incidental property," which is included in §101(27B):

> The term 'incidental property' means, with respect to a debtor's principal residence–
> (A) property commonly conveyed with a principal residence in the area where

3

the real property is located;
      (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
      (C) all replacements or additions.

Prior to BAPCPA, numerous cases around the country had found that when mortgage lenders included anything other than the real estate as collateral (such as appliances, insurance proceeds, rent) then the mortgage holder did not have a claim "secured only by a security interest in real property that is the debtor's principal residence."[1] Other courts had found that security interest in additional collateral did not take the mortgage outside the protection of §1322(b)(2).[2] With the courts differing on this issue, a logical conclusion is that the purpose behind the definitions set out in BAPCPA was to give more protection to mortgage lenders who take a security interest in additional collateral such as easements, fixtures, rents, royalties, escrow funds, and insurance proceeds, which are now considered "incidental property" and therefore part of the "debtor's principal residence." Moreover, the definition of "incidental property" includes "property commonly

---

[1] Hammond v. Commonwealth Mortgage Corporation of America (In re Hammond), 27 F.3d 52 (3rd Cir. 1994) (finding that a security interest in "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever" takes the mortgage beyond the protection of § 1322(b)(2)); Lomas Mortgage, Inc. v. Louis, 82 F.3d 1 (1st Cir. 1996) (finding that having a security interest in a multi-unit property in which part is the debtor's principal residence and part is income producing units does not bar modification under §1322(b)(2))

[2] Allied Credit Corporation v. Davis (In re Davis), 989 F.2d 208 (6th Cir. 1993) (finding that "Hereditaments and Appurtenances, rents, royalties, profits, and fixtures" are incidental to an interest in real property and do not constitute additional security for purposes of § 1322(b)(2)); Rolle v. Chase Manhattan Mortgage Corporation (In re Rolle), 218 B.R. 636 (Bankr. S.D. Fla. 1998) (finding that rents are an "incorporeal hereditament of the real property" and that a security interest in said rents does not create additional collateral so the anit-modification protection of § 1322(b)(2) still applies; also finding that a security interest in a refrigerator and stove provided no additional security interest because said collateral only have nominal value; therefore, section 1322(b)(2) still applies).

4

Case 07-70190-CMS7    Doc 32    Filed 08/02/07    Entered 08/02/07 14:14:19    Desc Main
Document      Page 4 of 12

conveyed with a principal residence in the area where the <u>real property</u> is located" 11 U.S.C. § 101(27B)(A) (emphasis added). If Congress meant to take out real property in §1322(b)(2), then why did they add it back in the definition of incidental property?

A review of §1322(c) shows two references to "debtor's principal residence." In §1322(c)(1) the debtor has the right to cure a default "with respect to, or that gave rise to, a lien on the debtor's principal residence...". Section 1322(c)(2) provides "in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section1325(a)(5) of this title." Within §1322 Congress has chosen to describe the "debtor's principal residence" without qualification as to whether or not it is real property and "real property that is the debtor's principal residence".

Green Tree is in essence asking this court to strike through or write out the words "real property" from the § 1322(b)(2). The job of this court is to interpret the code as Congress wrote it, no more no less. "[W]hen the statute's language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms." <u>Lamie v. United States Trustee</u>, 540 U.S. 526, 534 (2004). Furthermore, the "preeminent canon of statutory interpretation requires a court to 'presume that a legislature says in a statute what it means and means in a statute what it says there.'" <u>In re Kaplan</u>, 331 B.R. 483, 486 (Bankr. S.D. Fla. 2005) (quoting <u>Connecticut Nat. Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992)). Inquiry into the meaning of the statute begins with the text of the statute and ends there if the text is unambiguous. <u>In re Kaplan</u>, 331 B.R. at 486. As one court noted, "ambiguity tends to be in the eye of the interpreter."

5

In re Trejos, 352 B.R. 249, 258 (Bankr. D. Nev. 2006). That court also noted that a good faith argument and dispute between the parties "over what a statute means is not the same as ambiguity." In re Trejos, 352 B.R. at 258.

Because this court finds that §1322(b)(2), as read with §101(13A), is not ambiguous nor absurd, we must look to the plain meaning of the statutes when applying and interpreting them. When examining and interpreting the plain meaning of the statute's language, the court "must consider two important assumptions. First, the Court must give meaning and import to every word in a statute....Second, the Court must presume that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another." In re LaPlana, 363 B.R. 259, 265 (Bankr. M.D. Fla. 2007) (quoting In re Jass, 340 B.R. 411, 415 (Bankr. D. Utah 2006)). As noted above Congress distinguished between "debtor's principal residence" and "real property which is debtor's principal residence." The court presumes that Congress intentionally and purposefully has used the phrase "real property that is the debtor's principal residence" in §§1322(b)(2) and (c)(2) and intentionally and purposely used the phrase "debtor's principal residence" in § 1322(c)(1).

The "Eleventh Circuit Court of Appeals recently cautioned courts against crossing into congressional territory by attempting to 'fix' or 'improve' statutes." In re Berger, 2007 WL 1704403, *4 (Bankr. M.D. Ga. June 11, 2007) (citing Bracewell v. Kelley (In re Bracewell), 454 F.3d 1234, 1246 (11th Cir. 2006)). Specifically, the court in In re Bracewell stated, "'[o]ur function is to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to 'improve' statutes by altering them.'...If there are problems with the way a statute operates, Congress can alter the statute to eliminate those problems; we cannot." In re Bracewell, 454 F.3d at

6

1246 (quoting Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002)).

With the anti-modification statute, this court must consider and give meaning to every word of the statute. Thus, the court must consider and give meaning to the words "real property" found in § 1322(b)(2). To do otherwise would ignore an important part of the statute. The phrase "real property" has real meaning; it is a definable concept under Alabama law. It is not superfluous language. Courts have always looked to state law to determine what is and is not "real property" for purposes of 11 U.S.C. § 1322(b)(2). The Supreme Court has recognized that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." Butner v. U.S., 440 U.S. 48, 54 (1979); See also Barnhill v. Johnson, 503 U.S. 393, 398 (1992). The Supreme Court in Butner further stated,

> [p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'"

Butner, 440 U.S. at 55; See also Nobelman v. American Savings Bank, 508 U.S. 324, (1993).

In order to avoid the modification provision of 1322(b)(2) Green Tree's claim must be secured by "real property" that is "the debtor's principal residence". 11 U.S.C. Section 101(13A) defines what is the debtor's principal residence. The mobile home financed by Green Tree and in which Green Tree holds a security interest is the debtor's principal residence within the meaning of Section 101(13A).

State law determines whether or not this principal residence is "real property". Under Alabama law, a mobile home is considered to be "a motor vehicle" unless "(1) the mobile home is

7

affixed to real property, (2) the mobile home and real property are titled in the same individual's name, and (3) the owner cancels the certificate of title for a vehicle with regard to the mobile home. Ala. Code § 32-8-30(c) (1989)." In re Moss, 2007 WL 1076688, *2 (Bankr. S.D. Ala. April 4, 2007). Even though being attached or affixed to real property owned by the debtor is irrelevant for determining whether or not the mobile home is the debtor's principal residence, it is crucial for determining whether or not it is real or personal property under Alabama law.

In this case, the mobile home does not appear to be affixed to real property, nor does the mobile home and the property it sits upon appear to both be owned by the Debtor. The Debtor did not list any ownership interest in any real property in her schedules, and Green Tree does not assert that it has any security interest in any real property owned by the Debtor. Furthermore, there is no evidence that the Debtor has cancelled the certificate of title. Actually, Green Tree attached a copy of the Certificate of Title to its proof of claim filed in this case. The lien on the mobile home was perfected as required by Alabama law for personal property, not as required by Alabama law for real property. Therefore, because there is no evidence that the mobile home is affixed to real property owned by the Debtor and no evidence that the Debtor has cancelled the certificate of title for the mobile home, this court finds that the mobile home is personal property under Alabama law. Because it is personal property it cannot be considered real property under 11 U.S.C. § 1322(b)(2). Consequently, Green Tree does not hold a secured interest in real property that is the debtor's principal residence, so its claim can be modified under §1322(b)(2). Therefore, Green Tree's objection to confirmation and objection to debtor's motion to value on the basis that its claim cannot be modified are OVERRULED.

Green Tree cites two cases in support of its theory that the new definition of "debtor's

Case 07-70190-CMS7    Doc 32    Filed 08/02/07    Entered 08/02/07 14:14:19    Desc Main
Document    Page 8 of 12

principal residence" somehow removes the requirement that it have a secured interest in real property in order to fall under the anti-modification provision of § 1322(b)(2). Green Tree cites the case In re Sturgill, 337 B.R. 599 (Bankr. W.D. Ky. 2006). The problem with relying on Sturgill to support Green Tree's proposition is that the Sturgill case is a pre-BAPCPA case. The opinion reflects that the debtor's case was filed September 4, 2005, before the effective date of the BAPCPA amendments. The case makes no reference to 11 U.S.C. § 101(13A) because it did not apply to the case.

Green Tree also looks to In re Shepherd, 354 B.R. 505, 507 (Bankr. E.D. Tenn. 2006), to support its argument. The facts in In re Shepherd are analogous to the facts in the instant case. In In re Shepherd the creditor held a security interest in the debtor's mobile home, but not in the real property upon which it sat. That Court looked at whether the new definition of "debtor's principal residence" under 11 U.S.C. § 101(13A)(A) "prohibits a debtor, pursuant to 11 U.S.C. § 1322(b)(2), from modifying a secured claim that is secured only by a security interest in a mobile home that is the debtor's principal place of residence and which is located on real property in which the debtor has no ownership interest and/or against which the creditor has no perfected lien." In re Shepherd, 354 B.R. 505, 507 (Bankr. E.D. Tenn. 2006). The Court in In re Shepherd found that reading the new definition of "debtor's principal residence" in conjunction with section 1322(b)(2)...

> results in an absurdity because § 1322(b)(2) must now be construed to provide that a debtor may not modify the claims of a creditor holding a secured interest in the debtor's residential structure, including a condominium, cooperative, mobile home, or trailer, irrespective of whether it is attached to the real property, but only if the security interest includes the real property. While this court cannot speak for others, it finds that it cannot apply the anti-modification provision of § 1322(b)(2) when construing that section literally in conjunction with § 101(13A).

In re Shepherd, 354 B.R. at 511.

9

This court respectfully disagrees with the conclusions reached in In re Shepherd. This Court finds that "real property" and "debtor's principal residence" are two distinct requirements of §1322(b) and can be read together. This Court agrees with the finding of the Court in In re Moss:

> [t]he terms 'real property' and 'debtor's principal residence' are two distinct terms of art that require individual analyses. Whereas the Court must look to state law in determining whether a debtor's residence constitutes 'real property," the Court must look to Section 101(13A) in determining whether the same property constitutes the 'debtor's principal residence.' Therefore, although a residential structure may constitute a 'debtor's principal residence' under federal bankruptcy law, it does not necessarily constitute 'real property' under state law.

In re Moss, 2007 WL 1076688 at *2 (April 4, 2007), rehr denied In re Herrin, 2007 WL 1975573 (Bankr. S.D. Ala. July 3, 2007).

The facts set out in In re Moss are similar to the facts in this case. In In re Moss, Green Tree held a security interest in the debtor's mobile home, which was the debtor's principal place of residence. However, the debtor did not own the land on which said mobile home sat. In said case, the debtor sought to value the mobile home in her plan, and Green Tree filed an objection arguing that the debt could not be crammed down under 11 U.S.C. § 1322(b)(2) because the mobile home was the debtor's principal residence. The court reviewed the cases In re Sturgill and In re Shepherd but determined that their holdings did not help Green Tree. The court found that it must look to Alabama law to determine whether the debtor's home constitutes real property under § 1322(b)(2). Specifically, the court stated, "[i]n the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such 'property interests are created and defined by state law.'" In re Moss, 2007 WL 1076688 at *2 (quoting Nobelman v. American Sav. Bank, 508 U.S. 324, 329 (1993) (quoting Butner v. United States, 440 U.S. 48, 54-55 (1979))). The court then found that the mobile home

Case 07-70190-CMS7    Doc 32    Filed 08/02/07    Entered 08/02/07 14:14:19    Desc Main
Document      Page 10 of 12

was considered personal property under Alabama law and therefore was not considered real property under § 1322(b). The court found that "real property" and "debtor's principal residence" were separate terms that each required analysis. Thus, the court found that while the mobile home was the debtor's principal residence under the definition found in § 101(13A), it was not real property. Consequently, the court denied Green Tree's objection to confirmation.

Green Tree filed a Motion to Reconsider the decision reached in In re Moss. The court denied said Motion and held consistent with its prior decision. In re Herrin, 2007 WL 1975573 (Bankr. S.D. Ala. July 3, 2007). This court concurs with the conclusions of law stated in said Order denying Green Tree's Motion.

This court holds consistent with the holding found in In re Moss. The phrases "real property" and "debtor's principal residence" are distinct terms and must both be satisfied in order for the debt to be unmodifiable under 11 U.S.C. § 1322(b)(2). A residence can satisfy one requirement, but yet not satisfy the other without creating any absurdity or ambiguity within the statute. The mobile home in this case, just as the mobile home in In re Moss, is the debtor's principal residence and at the same time is personal property. As such, Green Tree's secured claim on said personal property is excluded from the anti-modification language of § 1322(b)(2).

## CONCLUSION

For the reasons stated above, the mobile home does qualify as the debtor's principal residence under the new definition provided in 11 U.S.C. § 101(13A). However, it fails to qualify as real property under Alabama law. Because it fails to do so, Green Tree does not have a secured interest in real property that is the Debtor's principal residence, and its claim is not protected by the anti-modification language of 11 U.S.C. § 1322(b)(2). Therefore, Green Tree's objection to

11

confirmation based on its claim being modified and objection to debtor's motion to value are

**OVERRULED**.

An order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this August 2, 2007.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge